294 S.E.2d 85

**Irene C. BENNETT, Virgil A. Bennett**

**v.**

**Ronald Joseph WALTON and Shelly & Sands, Inc., an Ohio Corporation.**

**No. 15092.**

Supreme Court of Appeals of West Virginia.

June 25, 1982.

Bogarad & Robertson, Martin S. Bogarad and David N. Dittmar, Weirton, for appellants.

Bachmann, Hess, Bachmann & Garden and R. Noel Foreman, Wheeling, for appellees.

PER CURIAM:

Appellants, Irene C. Bennett and Virgil A. Bennett, appeal from a final order of the Circuit Court of Marshall County denying their motion for a new trial and affirming a jury verdict in favor of the appellees, defendants below, Ronald Joseph Walton and Shelly & Sands, Inc. Appellants propound ten assignments of error in this appeal. Several of these relate to matters admittedly within the discretion of the trial judge and, finding no merit in them, we do not believe they warrant extended discussion. Neither do we find appellants' main assignments of error persuasive, and accordingly, we affirm.

The facts which gave rise to this matter may be briefly stated. On April 26, 1976, Irene Bennett was travelling north on West Virginia Route 2 near Moundsville, West Virginia, when she collided with a tanker truck operated by appellee Ronald Joseph Walton for Shelly & Sands, Inc. The point of impact of the vehicles and their position at the time of the accident were subjects of dispute at trial.

Appellants complain of the admission of certain evidence at trial. They contend that expert witness John Purcupile relied upon calculations in forming his opinion as to the point of impact which were outside the scope of the hypothetical question put to him, and that he used a model of the scene of the accident for demonstrative purposes, which model was not constructed to scale. Appellants also complain of the admission of certain testimony of Officers J. G. Watson and Samuel Michael Pinion, who originally investigated the accident. Appellants also assert that the trial court erred in refusing plaintiff's instruction no. 8, regarding the agency relationship between Walton and his employer, Shelly & Sands, Inc., and in giving defendant's instructions regarding contributory negligence, nos. 12–14. We address these assignments in order.

John Purcupile, a professor of mechanical engineering, was retained by the defense in 1979, in his capacity as a member of the consulting firm Purcupile & Associates, to conduct an extensive investi-

gation of the accident. Purcupile conducted aerial and ground inspections of the accident site, examinations of the tanker truck and of Mrs. Bennett's automobile, and research of the reports of the investigating officers. Purcupile computed mathematical calculations based on the findings from these various inspections and reports. As we stated in Syllabus point 7 of *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975) and Syllabus point 7, *Kerr v. Lunsford*, 31 W.Va. 659, 8 S.E. 493 (1888):

> "In putting hypothetical questions to expert witnesses counsel may assume the facts in accordance with their theory of them; it is not essential that they should state them as they exist; but the hypothesis should be based on a state of facts, which the evidence in the cause tends to prove."

There was nothing improper in using these calculations to help form the opinion expressed in response to the hypothetical question asked by counsel for appellees.

▪ During direct examination Purcupile used a model of the accident scene which he had prepared to demonstrate his version of the accident. Immediately following direct examination of Purcupile, before trial was adjourned for the evening, plaintiff's counsel conducted considerable cross-examination. When trial was resumed the following morning, plaintiff's cross-examination of Purcupile continued. This examination was lengthy and exhaustive. At the conclusion of cross-examination, the court took a recess, counsel for the appellees announced that he had no re-direct examination for Purcupile. Counsel for appellant requested that the court allow him to reopen cross-examination in view of an alleged discrepancy in the measurements of the model used for demonstrative purposes by the witness. The trial judge pointed out that the model had been available for inspection by plaintiff's counsel during the previous evening recess, and that the model was not in evidence, and was used only for demonstrative purposes by the witness. The trial judge refused to permit further cross-examination. We do not believe the trial court abused its discretion in so ruling. *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975) (Syllabus point 18).

▪ Appellants complain of the use of allegedly inaccurate police reports by Officers Watson and Pinion and of the admission into evidence of the opinions of these officers as to the orientation of the vehicles involved in the crash at the time of impact. *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974), dealt with a situation very similar to this aspect of the case before us. In that case an investigating police officer was permitted to testify "regarding the location of the accident occurrence and the impact points between the two vehicles involved in the collision ... although the police official was not an eye witness to the occurrence." 158 W.Va. at 32, 210 S.E.2d at 624. We set forth the rule governing the situation in Syllabus point 5:

> "Whether a witness is qualified to state an opinion is a matter which rests within the sound discretion of the trial court and its ruling will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974).

After reviewing the qualifications of the police officer and the foundation of his conclusions, the court in *Jordan* concluded that the opinion offered was, under the circumstances, "unobjectionable, relevant, and competent." 158 W.Va. at 40, 210 S.E.2d at 628. We find this to be a fair characterization of the evidence offered by Officers Watson and Pinion in the trial below.

▪ Instruction no. 8 offered by the appellants sought to define the effect of the agency relationship existing between Walton, the truck driver, and Shelly & Sands, Inc., his employer, on the responsibility of these parties for damages in the event of an award. We express no opinion as to the propriety of the instruction offered, but merely point out that the refusal of the instruction was, at most, harmless error in view of the fact that the jury here found no negligence on the part of either defendant Walton or Shelly & Sands, Inc. Defendant's instructions nos. 12 and 13 were objected to by the appellants, but the objections interposed were not specific objections. As we stated in syllabus point 4

of *Fortner v. Napier,* 153 W.Va. 143, 168 S.E.2d 737 (1969) "[t]he stringent requirements of Rule 51, R.C.P., i.e., stating 'distinctly' the ground of objection to an instruction, is not met by a general objection."

 Admission of certain photographs taken by defense witnesses is assigned as error. These photographs depict the accident scene and the vehicles involved. As we stated in Syllabus point 2 of *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978):

"As a general rule photographs of persons, things, and places, when duly verified and shown by intrinsic evidence to be faithful representations of the objects they purport to portray, are admissible in evidence as aids to the jury in understanding the evidence; and whether a particular photograph or groups of photographs should be admitted into evidence rests in the sound discretion of the trial court and its ruling on the question of the admissibility of such evidence will be upheld unless it clearly appears that its discretion has been abused." Syllabus point 1, *Thrasher v. Amere Gas Utilities Co.,* 138 W.Va. 166, 75 S.E.2d 376 (1953), *appeal dismissed,* 347 U.S. 910, 74 S.Ct. 478, 98 L.Ed. 1067 (1954); *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978).

It is apparent from an examination of the photographs introduced that the trial court did not abuse its discretion in allowing them to be admitted.

 Appellants allege that the trial court abused its discretion in allowing a view of the scene. They assert that certain paint marks, placed on the roadway of Route 2 by defense witness John Purcupile were apparent to the jury when the view was taken. Appellants fail to make any argument that these markings prejudiced the jury against their cause, and we find no error in the trial court's allowance of the view.

 Appellants contend that the trial court abused its discretion in allowing appellees' counsel to ask the question "have you ever taken a drug known as valium" on voir dire. Appellee Irene Bennett had testified that she had taken a valium tablet the morning of the accident. *W.Va.Code,* 56–6–12, [1923], permits inquiry designed to disclose the potential prejudice of prospective jurors. *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227 (1978). In view of this, the trial court did not err in allowing appellees this inquiry regarding the prospective jurors' experience with a drug which the plaintiff admitted having taken the morning of the accident.

 Although the medical dispositions offered by the appellants were largely admitted into evidence by the court, the trial judge did exclude certain medical opinion evidence as to the permanent consequences of the injuries Irene Bennett received. The trial court was correct in excluding this evidence, as it was not clear that the physicians deposed held these opinions to a reasonable degree of medical certainty. The physicians reported, in the challenged portions of these depositions, that there was a possibility of future permanent consequences from the injuries Irene Bennett received in the accident. As we stated in syllabus point 7 of *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974):

"To form a legal basis for recovery of future permanent consequences of the negligent infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury; contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery."

Reasonable certainty is the standard which must be applied to medical opinion evidence offered as to future permanent consequences of a personal injury. The trial court applied this standard, allowing that part of appellant's evidence on this subject which met the test to go to the jury, and refusing to admit medical opinions which amounted to speculation.

 Finally, appellants contend that the trial court should have declared a mistrial due to the numerous errors alleged to have transpired as this trial progressed. Upon

review of the record we conclude that the trial of this cause was conducted fairly and properly by the court below and accordingly, we affirm.

Affirmed.